UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO DOMINGUEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　Defendant. | Case No. 14-cv-05535-RS<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** |

## I.　INTRODUCTION

Plaintiff Lorenzo Dominguez challenges the Social Security Commissioner's final decision denying his application for Social Security Disability Benefits ("SSDI"). Specifically, Dominguez seeks reversal of the Administrative Law Judge's ("ALJ") decision and remand for the immediate award of benefits. The Commissioner asks this court to uphold the ALJ's decision, or in the alternative, remand for additional investigation or explanation. Upon consideration of the parties' cross-motions for summary judgment, the court finds that not all of the ALJ's material findings are supported by substantial evidence. Accordingly, the matter will be remanded for further evaluation, as explained below.

## II.    BACKGROUND

Lorenzo Dominguez, a fifty-three year-old college graduate[1], worked high-level jobs for a significant portion of his adult life until he became diagnosed with bipolar disorder, depression, and anxiety in 2007. (AR 52-53, 217-218). From 1998 to 2007, Dominguez held various positions in Boston, including paralegal, senior project manager, and client director. (A.R. 52, 217.). Dominguez left each position as the result of anxiety, depression, and inability to keep up with the work load. (A.R. 52). After receiving his bipolar disorder and depression diagnosis, Dominguez briefly returned to work as a senior project manager, but resigned in January 2008 for the same reasons. (A.R. 52). Dominguez then moved back to California to live with his mother. (A.R. 53). Dominguez's mother died in 2009, which Dominguez states exacerbated his mental afflictions. (A.R. 60-61). Dominguez now lives with his father and his father's family. (A.R. 63)

Upon returning to California in 2008, Dominguez did not seek treatment for his depression, bipolar disorder, and anxiety until November 2012. (A.R. 53-54, 454). Dominguez explains that he researched low-income insurance programs, but assumed he was ineligible. (A.R. 53-54). Dominguez states that he became motivated to seek mental health treatment in November 2011 after his attorney notified him he would be eligible for low-income county insurance. (A.R. 54-55, 437-456). Dominguez filed an application for SSDI benefits on January 24, 2011, alleging disability from and after May 15, 2007. (AR 183-184). When his application was denied at the initial and reconsideration levels, Dominguez requested a hearing before an ALJ. The ALJ issued an unfavorable decision and the Appeals council declined review. Therefore, the ALJ's decision became the Commissioner's final decision.   This appeal followed.

---

[1] Dominguez received a degree from the University of San Francisco in 1993, and earned a paralegal certificate in 1991. (AR 217).

### III. LEGAL STANDARD

A. *Standard for Reviewing the Commissioner's Decision*

Section 405(g) of the United States Code, chapter 42, establishes the standard of review of the Social Security Commissioner's decision to deny benefits. The Commissioner's finding may be reversed if it is not supported by substantial evidence, or if it is based on legal error. See *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In this context, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. It requires more than a scintilla, but less than a preponderance of evidence. *Id*. To determine whether substantial evidence supports the Commissioner's decision, the Court reviews the administrative record as a whole, considering adverse as well as supporting evidence. *Id. See also Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1992).

B. *Standard for Determining Disability*

A person is "disabled" for purposes of receiving Social Security benefits if he or she is unable to engage in a substantially gainful activity due to a physical or mental impairment that has lasted for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Social Security disability cases are evaluated under a five-step test. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920 (a)(4)(ii). If the ALJ concludes the claimant does not have a "severe" impairment, the claimant is not "disabled" and the claim must be denied. *Id*. If the claimant does have a "severe" impairment, the third step requires the ALJ to determine whether the impairment meets or equals the criteria of an impairment listed in the relevant regulation. 20 CFR Part 404, subpart P, Appendix 1; 20 CFR § 404.1520(a)(4)(iii). In the fourth step, the Commissioner must determine whether the claimant has sufficient "residual functional capacity" to perform his or her past work. 20 CFR § 404.1520(a)(4)(iv). If so, the claimant is not "disabled" and the claim must be denied.

*Id*. The claimant has the burden of proving that he or she is unable to perform past relevant work. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, he or she has presented a prima facie case of disability. *Id*. In the fifth step of the analysis, the burden shifts to the Commissioner to establish that the claimant can perform other substantial gainful work. 20 CFR § 404.1520(a)(4)(v). Otherwise, the claimant will be found disabled. *Id*.

### III.   DISCUSSION

Dominguez's principal argument arises from the ALJ's decision to discredit some evidence and to credit other medical evidence.[2] The ALJ gave weight to the state agency's opinions and the vocational expert, but afforded lesser weight to consulting psychologist reports of Dr. Cain and Dr. Palmer, and treating physician Dr. Athale. Furthermore, the ALJ also discounted Dominguez's own testimony regarding the severity, intensity, and persistence of his symptoms, but credited his description of his ability to engage in activities, such as his ability do his own laundry. (A.R. 33-34). Lastly, the ALJ did not consider the lay witness reports of Dominguez's cousins and family friend, as the ALJ stated their testimony "basically repeat[ed] claimant's allegations but are not supported by the objective evidence to the extent alleged." (A.R. 36).

Dominguez contends that the ALJ erred by rejecting Dr. Palmer's report and opinions, particularly with regard to the severity of Dominguez's limitations. Dr. Palmer conducted a consultative psychological examination in May of 2011. (A.R. 366). The report states that

---

[2] The ALJ weighed several pieces of evidence: records from Dominguez's mental health treatment at Fenway Health from approximately July 2007 through March 2008 (A.R. 327-364); Dr. Athale and Nurse Practitioner Johnson's records of Dominguez's treatment at Community Health Clinic Ole from November 2012 through February 2013(A.R. 439-467); Dr. Cain's consultative evaluation of Dominguez performed on October 24, 2012 (A.R. 427); state agency case analysis of Dominguez by Dr. Jacobsen in October 2011; state agency psychologist Dr. Garland's psychiatric review of record completed in July 2011 (A.R. 372-389); state agency report completed in July 2011 (A.R. 392); Dr. Palmer's consultative evaluation of Dominguez performed on May 2, 2011 (A.R. 366); Dominguez's own testimony before the ALJ on May 31, 2013 (A.R. 50-96); the Vocational Expert's testimony before the ALJ on May 31, 2013 (*Id.*); questionnaire and declaration of Dominguez's family friend Shirley Tapacio (A.R. 263-270; 314); declaration of Dominguez's cousin Josephine C. Brown (A.R. 300-301); and declaration and questionnaire of Dominguez's cousin Mary Ann Dominguez (A.R. 302-306).

Dominguez was interviewed and considered to be a "reliable historian." *Id.* Dr. Palmer also reviewed the Disability Report Adult Form SSA-3368 for his evaluation. *Id.* Dr. Palmer noted that Dominguez engaged in independent basic activities of daily living, including preparing his own meals. (A.R. 368). He assessed Dominguez and diagnosed him with Bipolar I disorder, and with problems related to coping with psychiatric condition, inability to work. (A.R. 370). Dr. Palmer assigned a so-called "Global Assessment of Functioning" ("GAF") score of 50-55. Further, Dr. Palmer stated that Dominguez is "able to adequately perform one or two-step repetitive tasks," but has a "poor ability to accept instructions from supervisors," and a "poor ability to maintain regular attendance in the workplace" or to "complete a normal workday." (A.R. 370). Dr. Palmer noted that the condition could "be chronic in nature" but that Dominguez's condition might "abate on its own within a one year period" and would "benefit from starting therapy and medication."

The ALJ found that although Dr. Palmer gave Dominguez a GAF of 50-55 and found him to have severe limitations, "he also stated that claimant's current mental health condition may abate on its own." The ALJ further noted that Dominguez had not yet started treatment with Dr. Athale at that point in time. When he subsequently did, his bipolar disorder was described as "mild**."** (A.R. 35).

The ALJ also afforded "minimal weight to the findings of Dr. Cain." (A.R. 35). Dr. Cain examined Dominguez in October of 2012, (A.R. 427), and found him to have impaired social functioning with significant anxiety and depression. (A.R. 428). Dr. Cain observed Dominguez's behavior such as crying, and rapid to slow speech. (A.R. 428). She noted that Dominguez's limitations "may make it difficult to understand, carry out, and remember even simple instructions." (A.R. 428-429). Dr. Cain found that Dominguez "will have difficulty with coworkers, supervisors, and the general public." *Id.* Dr. Cain also described Dominguez's daily living and independent living skills as "significantly impaired." She evaluated Dominguez as having a GAF of 42.

Again, because Dr. Cain assessed Dominguez prior to his subsequent treatment by Dr. Athale, the ALJ minimized her conclusions as "inconsistent with the treating records indicating

that claimant responds well to treatment and that he has only moderate limitations in most areas." (A.R. 35). Additionally, the ALJ found that Dr. Cain appeared to base much of his assessment of Dominguez's functioning level on "self-reported limitations." (A.R. 35).

The Ninth Circuit affords "greater weight to a treating physician's opinion" because he or she had a "greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (*citing Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir. 1987)). An ALJ is free to discredit a treating physician's opinion that is brief and conclusory so long as the ALJ presents "clear and convincing reasons for doing so." *Id.* (internal quotations omitted). Furthermore, if a non-treating physician's opinion rests on objective tests, then it is to be viewed as "substantial evidence." *Id.* In the case where the reports are all inconclusive, then the ALJ is presented with the task of making credibility determinations and resolving conflicting testimony. *Id.* Additionally, an ALJ "does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008). Further, the "opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

Here, the ALJ has discounted the evidence provided by examining physicians and elevated the reports of state agency physicians Dr. Garland and Dr. Jacobson, who had not examined Dominguez personally. The ALJ's rationale for selectively accepting parts of the examining physicians'' reports and rejecting others appears primarily to rest on the suggestion that Dominguez's conditions could be, and were, improved with treatment. The ALJ, however, did not adequately explain how that supported reliance on some, but not all, of the examining physicians' conclusions.

The ALJ also suggested Dr. Cain's report unduly relied on Dominguez's self-reporting. An ALJ is entitled to reject a physician report that is largely based on self-reporting without

independent examination or diagnosis. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, Dr. Cain's report and Dr. Palmer's report were supported by their own physical observations, and both doctors provided a diagnosis. Thus, the ALJ did not provide adequate explanation for discrediting the examining physician reports in favor of the non-examining physician reports.[3]

Dominguez argues both that he should have been found presumptively disabled at step three of the analysis and that his RFC was overstated.  Both issues turn on the appropriate weight to be given to the physicians' testimony.   Contrary to Dominguez's contention, however, the present record does not compel a conclusion that the ALJ would be required to find him disabled upon an appropriate weighing of the evidence.  Accordingly, the matter will be remanded for further proceedings.

### III.   CONCLUSION

This matter is remanded to the ALJ for further proceedings consistent with the terms of this order.

**IT IS SO ORDERED**.

Dated: May 27, 2016

_____
RICHARD SEEBORG
United States District Judge

---

[3] Dominguez also challenges the ALJ's rejection of his own testimony and the declarations of lay witness reports that largely corroborated his self-reported severity of his symptoms.  The ALJ did not discredit all of Dominguez's testimony but instead resolved conflicting testimony.  For example, while Dominguez reported severe limitations, he also stated he was able to keep his room clean and conduct household chores. The ALJ's recognition of these inconsistencies is not, in and of itself, error. (A.R. 36).